UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DANA ROBERTSON, ET AL          CIVIL ACTION NO. 13-CV-3020

VERSUS                         JUDGE DOHERTY

TOWN OF WASHINGTON, ET AL      MAGISTRATE JUDGE HANNA

### *Report and Recommendation*

Before the Court are the Motions for Summary Judgment filed by Defendants Officer Richard Arceneaux, Police Chief Ronelle Broussard, and Mayor John Pitre [Rec. Docs. 31] and the corresponding motion by Darwin Select Insurance. [Rec. Docs. 43]. The motions have been referred to the undersigned for Report and Recommendation. They are opposed by the plaintiffs. [Rec. Doc. 45]. A Reply/Response memorandum was filed by the movants. [Rec. Doc. 48]. Oral argument was heard on the motions on November 25, 2014. After considering the filings and arguments of the parties, the applicable law, and for the reasons set out herein, it is recommended that the motions be GRANTED IN PART and DENIED IN PART.

### *Factual and Procedural Background:*

The claims in this litigation arise out of an incident on the morning of December 2, 2012. On that date, Defendant Richard Arceneaux was a member of the

Town of Washington Police Department, and he was monitoring traffic along Interstate 49.  He was in uniform, in a marked patrol unit. Using a Doppler radar device, Arceneaux clocked the plaintiffs' vehicle, driven by Dana Robertson, traveling 81 mph in a 75 mph speed zone.  The vehicle was pulled over by Arceneaux, who stopped his police unit behind the plaintiffs' vehicle. He approached the driver's side of the vehicle and informed Mrs. Robertson that he was stopping her for speeding.  He asked for and took her driver's license and registration documents, returned to his police unit, and returned back to the plaintiffs' vehicle moments later with two written citations, one for the speeding violation and one for a seatbelt violation for one of the Robertson children who Arceneaux believed had been unrestrained at the time of the stop.  Both Dana and her husband Stephen Robertson questioned and disputed the seatbelt violation.  They did not challenge the speeding violation.

At this point the factual versions of the events which followed are in stark contrast.  According to Arceneaux, the plaintiffs' argument about the seatbelt violation made it difficult for him to explain details about the related court date, and "to diffuse the situation" he therefore asked Dana Robertson to exit her vehicle, which she did. [Rec. Doc. 31-2, ¶¶7-8]. She continued to question the seatbelt violation citation, and Arceneaux informed her that if she refused to sign the citation

which he had presented to her, he would arrest her.

Stephen Robertson also exited the vehicle and, in an "angry manner" approached to within 3 feet of Arceneaux who directed him to return to the vehicle. Stephen Robertson did not comply and instructed his wife to drop the ticket book and pen which were in her hands, and she did. [Rec. Doc. 1-1, ¶18; Doc. 45-3, ¶16]. Arceneaux informed his dispatcher that he would be arresting Dana Robertson for her failure to comply with his instructions.  He instructed Mrs. Robertson to place her hands behind her back for handcuffing.  She resisted and Arceneaux took the necessary steps to physically restrain her and get her handcuffed.

A Louisiana state wildlife agent, Jason Sanchez,  was traveling on Interstate 49 and saw the interactions between the Robertsons and Arceneaux outside the vehicles.  He observed a struggle between Arceneaux and Mrs. Robertson, who he described to be twisting,  trying to pull away, and hitting at the officer. [Rec. Doc. 31-3, ¶4].  The agent  determined that Arceneaux might need assistance, and he activated his blue lights and drove to the scene.  As Sanchez walked up to the group, Arceneaux had successfully handcuffed Dana Robertson, who continued to be belligerent. [Rec. Doc. 31-3, ¶¶7, 9].

On Arceneaux's request for help, Sanchez instructed Stephen Robertson to get into his vehicle, threatening him with arrest when  he failed to respond to the agent's

verbal direction. Mr. Robertson  complied after the threat of arrest by Sanchez. [Rec. Doc. 1-1, ¶21; Doc. 31-3, ¶13].  Sanchez responded to questions from Stephen Robertson about Arceneaux's insistance that Dana Robertson sign the citations and the significance of her signature on those documents.  Sanchez conveyed that Dana Robertson could be arrested for refusing to sign the citations. [Rec. Doc. 31-3, ¶14]. Sanchez characterized the behaviors of Dana and Stephen Robertson as "belligerent, hostile, and irrational." [Rec. Doc. 31-3, ¶16].

According to Dana Robertson's version of the events all contained in her affidavit[Rec. Doc. 45-3], when Arceneaux presented a citation for a seat belt violation while they were still in the vehicle, her husband questioned the point at which Arceneaux saw the child out of the seatbelt as they contend the child unbuckled after the stop in order to see the police car. Mr. Robertson also asked whether Arceneaux had a dashboard camera. Arceneaux said that he did at which point Mr. Robertson said to his wife not to worry because they would subpoena the camera to prove their child was restrained. Arceneaux became angry, and when Dana Robertson asked the same question as her husband - when did Arceneaux see their son out of his seatbelt - Arceneaux, "clearly in an excited and agitated state" ordered her to get out of the car. Mrs. Robertson complied and walked back to the rear of her vehicle where Arceneaux told her to sign the ticket. She took the pen in one hand and

-4-

the tickets in the other and prepared to sign as she repeated her question about the seatbelt violation.

Arceneaux suddenly told Mrs. Robertson to put her hands behind her back and angrily grabbed her arm to handcuff her. Arceneaux said "so now you are resisting arrest" and had both of his hands around Mrs. Robertson's arms violently swinging her "side-to-side like a ragdoll as she held the ticket in one hand and the pen in the other hand." Stephen Robertson was watching all of this through the window and got out and went to the back of the vehicle with his palms outstretched so Arceneaux could see he was not armed.  He got within  3 feet of Arceneaux with his arms still extended and asked Arceneaux what he was doing. Arceneaux commanded him to get back in the vehicle. Mr. Robertson saw the ticket book and pen in his wife's hands so he told her to drop them so she wouldn't scratch Arceneaux and give him a reason to hurt his wife. Mrs. Robertson dropped the pen and ticket book.

Arceneaux was heard to say on his radio "resisting, resisting, resisting" as Mr. Robertson backed up. Arceneaux then pulled out a can of mace and held it one inch from Mrs. Robertson's face smirking. Mrs. Robertson told him she would sign the tickets and Arceneaux responded it was too late for that.

Another Town of Washington police officer arrived at the scene and transported Dana Robertson to the police department.  Stephen Robertson was

allowed to follow in the family vehicle.  Agent Sanchez also traveled to the police department to submit his statement.  In addition to the speeding and seatbelt violations, Dana Robertson was booked with resisting an officer (La. R.S. 14:108). After she was processed and released, Stephen Robertson was booked with interfering with a law enforcement investigation (La. R.S. 14:329).  Both were released on recognizance bonds and issued a court date of January 22, 2013.  The charges of resisting and interference were later dropped.  The speeding charge was reduced to a non-moving violation, and the seatbelt violation charge was also dropped.  Dana Robertson paid a $125 fine by money order. [Rec. Doc. 1-1, ¶52].

On September 26, 2013, Dana and Stephen Robertson, individually and for their minor children, filed suit in the 27th Judicial District Court, Opelousas, Louisiana[1], bringing this §1983 action against the Town of Washington, Louisiana, the Washington Police Department, Officer Richard Arceneaux, Police Chief Ronnelle Broussard, Mayor Joseph Pitre and their insurer. The individuals named as defendants have been sued in both their official and individual capacities. [Rec. Doc. 1-1, ¶2].  Municipal liability has been asserted against the Washington Police Department and the Town of Washington, and tort claims based on state law are also alleged.

_____

[1]Docket No. 13-C-4537; Division A.

On November 7, 2013, the captioned matter was removed to this Court by the insurer defendant Darwin Select Insurance Company[2], based on federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

### Applicable Law and Analysis

In the claims brought pursuant to 42 U.S.C. §1983 and Louisiana tort law, Dana and Stephen Robertson contend that the defendants violated their constitutional rights to be free from unreasonable seizure/arrest and the excessive use of force as guaranteed by the Constitution of the United States. Specifically, Plaintiffs allege they were falsely arrested and detained against their will and without statutory authority; that Dana Robertson was a victim of excessive force by the arresting officer; that they were maliciously prosecuted as a result of the arresting officer's false police report, and that they were defamed by the officer.

In the limited Motion for Summary Judgment [Rec. Doc. 31], the defendants seek dismissal of the §1983 claims against Officer Richard Arceneaux, Police Chief Ronnelle Broussard, and Mayor Joseph Pitre in their individual and official capacities. Darwin Select adopts the motion and seeks dismissal of the §1983 claims

_____

[2]The insurer defendant was incorrectly identified in the Petition for Damages as Allied World National Assurance Company. In the Notice of Removal and in the Answer, Darwin Select Insurance Company pointed out the error and acknowledged its status as the proper defendant. [Rec. Doc. 1, 10]

in its capacity as the insurer of these defendants. [Rec. Doc. 43].

## I. The Summary Judgment Standard:

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d at 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id.* All facts and justifiable inferences are construed in the light most favorable to the nonmovant.  *Brumfield v. Hollins*, 551 F.3d at 326;  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. at 255.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.   *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. at 325. The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005).  Where no such showing is made, the moving party "is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan v. Nat. Wildlife Federation*, 497 U.S. 871, 884 (1990) (*quoting Celotex Corp. v. Catrett*, 477 U.S. at 322-23(1986)). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of  contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could

not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075(5th Cir. 1994)(en banc)(citations and internal quotation marks omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontroverted and unimpeached. *Roberts v. Cardinal Services*, 266 F.3d 368, 373(5th Cir. 2001).

## II. 42 U.S.C. §1983

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. §1983; *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 n. 3 (5th Cir.1999).  To pursue a claim under §1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that

the alleged deprivation was committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir.2008).  The defendants do not contest whether Officer Arceneaux, Chief Broussard and Mayor Pitre acted under color of law at the relevant times.  They do challenge the alleged constitutional violations and each is sued in both his official and individual capacities.

"A judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents." *Deshotels v. Village of Pine Prairie*, No. 11-CV-2052, 2012 WL 1712358, at *4 (W.D. La. Apr. 13, 2012). Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012). When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them. See, e.g., *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective

governmental entities themselves."); *Flores v. Cameron County, Tex*., 92 F.3d 258, 261(5th Cir. 1996).  In keeping with this principle, the undersigned finds that the plaintiffs' claims against the individual defendants in their official capacities are redundant of the claims asserted against the government entity defendant, and the official capacity claims against Arceneaux, Broussard and Pitre should be dismissed.

In order to assert a valid claim against an official in his individual capacity, a §1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.  *Jones v. Lowndes County, Miss*., 678 F.3d 344, 349 (5th Cir. 2012).  "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).  "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011), quoting *Gates v. Texas Department of Protective & Regulatory  Services*, 537 F.3d 404, 435 (5th Cir. 2008).  To establish supervisor liability for constitutional violations committed by subordinate employees, the

plaintiffs must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates. *Porter v. Epps*, 659 F.3d at 446; *Gates v. Texas*, 537 F.3d at 435. Deliberate indifference requires "*proof* that a municipal actor disregarded a known or obvious consequence of his action." *Porter v. Epps,* 659 F.3d at 447, quoting *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011) (emphasis added).

The individual capacity claims by the Robertsons against Chief Ronelle Broussard and Mayor Joseph Pitre are set out at Paragraphs 53-54 of the Complaint. [Rec. Doc. 1-1, pp. 11-12].  With respect to the claim against Mayor Pitre, the Robertson plaintiffs concede in brief that "no independent basis of liability against Mayor Pitre has been demonstrated." [Rec. Doc. 45, p. 7]. Although the Complaint references a conspiracy among the defendants, the record contains no evidence to support that allegation, and Mayor Pitre testified that he is not involved in police activity and rarely saw Officer Arceneaux.  There is no evidence in the record that he was personally involved in anything having to do with the Robertsons, that he implemented any unconstitutional policies or that he acted or failed to act with deliberate indifference to the alleged constitutional violations committed by Arceneaux. Thus, the plaintiffs have failed to set forth evidence necessary to support a cause of action against Mayor Pitre in his

individual capacity. The Court recommends that the motion be granted as to

Mayor Pitre and that the claims against him in his individual capacity be

dismissed.

As to Chief Broussard, the plaintiffs argue that he and others in authority

"allowed Officer Arceneaux to draw up the paperwork they knew was false" and

that he disagreed with Arceneaux's assertion that it was "protocol" to arrest traffic

violators who refused to sign traffic citations.  There is no dispute that Chief

Broussard had no personal involvement in the stop and arrest of the Robertsons.

To the contrary, the evidence establishes that Chief Broussard was out of town on

that date and did not learn of the incident on that date thus the allegation

concerning his authorization of preparing false paperwork is without merit as it is

unsupported by the evidence.

There is no evidence that Chief Broussard participated in a constitutional

deprivation or that any wrongful action by him was causally connected to a

constitutional deprivation.  There is also no evidence that Chief Broussard acted or

failed to act with deliberate indifference to the alleged constitutional violations

committed by Arceneaux. Rather, the plaintiffs have alleged that it was Chief

Broussard who acted to dismiss the charges against Stephen Robertson and some

charges against Dana Robertson.  He also acted to have the speeding ticket

-14-

reduced.

As to whether he implemented any unconstitutional policies, Chief Broussard's disagreement with Arceneaux's understanding of what Areceneaux simply called "protocol" has no effect on his individual capacity liability. Louisiana law provides for the issuance of traffic citations containing notices to appear by all traffic enforcement agencies in the state. La. R.S. 32:398.1.  In the context of a traffic citation for violations of Louisiana's Highway Regulatory Act, LSA-R.S. 32:391 provides in pertinent part:

> Whenever any person is arrested for a violation of any provision of this Chapter or any regulation of the department or of the secretary of the Department of Public Safety and Corrections adopted pursuant thereto, except as otherwise provided in this Section, the arresting officer shall take his name, address, the license number of his motor vehicle, and the number of his operator's license, and shall issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons and notice. The arresting officer's original or electronic signature shall be affixed to the summons. The time shall be at least five days after arrest, unless the person arrested demands an earlier hearing. If the person arrested demands an earlier hearing, he shall have a right to an immediate hearing or a hearing within twenty-four hours, at a convenient hour, to be before a magistrate within the parish where the offense was committed. Except as otherwise provided in this Section, the person arrested shall have the option of remaining in custody pending his furnishing bail as fixed by a magistrate or depositing his operator's license with the arresting officer, as provided in R.S. 32:411.
>
> B. If the person arrested holds a Louisiana operator's license and gives his written promise to appear at the time and place stated, the

officer may release him from custody or take him immediately before a magistrate, but shall not require the person arrested to deposit his operator's license. **Any such person refusing to give the written promise to appear shall be taken immediately by the arresting officer before the nearest or most accessible magistrate having jurisdiction.** Any person who willfully violates his written promise to appear shall be punished as provided in R.S. 32:57.1, regardless of the disposition of the charge upon which he was arrested originally. The arresting officer shall fully inform the arrested person of the consequences of failing to honor a written promise to appear pursuant to R.S. 32:57.1.[Emphasis added]

Also pursuant to Louisiana law, a person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained. LSA-C.Cr.P.Art. 220. Rather than any departmental policy, state law would have authorized the arrest of Dana Robertson based on her refusal to give a written promise to appear. State law would have also authorized the use of reasonable force to effect the arrest and detention.  A municipal entity cannot be held liable for enforcing state law because the municipal policy in that instance "may more fairly be characterized as the effectuation of the policy of the State ... embodied in that statute, for which the citizens of a particular county should not bear singular responsibility." *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980). If the municipal entity could not be held liable, then the Chief of Police could not be held individually liable

-16-

because the policy itself is not that of the Town of Washington but of the State of Louisiana. Thus, the plaintiffs have failed to present evidence sufficient to establish a cause of action against Chief Broussard in his individual capacity. The Court therefore recommends the individual capacity claims against Chief Broussard be dismissed.

## III. Qualified Immunity

Officer Arceneaux seeks dismissal of the individual capacity claims against him based on qualified immunity.[3] "A qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Atteberry v. Nocona General Hospital*, 430 F.3d 245, 253 (5th Cir.2005) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986). "Qualified immunity operates...to protect officers from the sometimes hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is

---

[3] While the movants suggest Mayor Pitre and Chief Broussard have qualified immunity, the Court has found that the plaintiffs have not met their burden to establish a valid §1983 claim against these two individuals and does not reach the question of their qualified immunity.

unlawful." *Saucier v. Katz,*  533 U.S. 194, 205-06 (2001).

Recently, the Supreme Court clarified the role of the courts in deciding a qualified immunity defense at the summary judgment stage. Specifically, the Court held the Court of Appeals failed to view the evidence in a light most favorable to the nonmoving party, and in so doing, provided a roadmap for the district court to follow in its analysis:

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]" . . .When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. . . .The inquiry into whether this right was violated requires a balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " . . .
>
> The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. ... Governmental actors are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " . . . "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." . . .
>
> Courts have discretion to decide the order in which to engage these two prongs. . . . But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. . .This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial." . . .Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." . . . In making that determination, a court must view the evidence "in the light most favorable to the opposing party." . . .

Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or seizures, we have instructed that courts should define the "clearly established" right at issue on the basis of the "specific context of the case." . . .Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. See *Brosseau*, supra, at 195, 198, 125 S.Ct. 596 (inquiring as to whether conduct violated clearly established law " 'in light of the specific context of the case' " and construing "facts ... in a light most favorable to" the nonmovant).

*Tolan v. Cotton,* ___ U.S. ___; 134 S.Ct. 1861, 1865-1866, ( May 5, 2014) (citations omitted).

## A. The Stop/Seizure of Dana Robertson

Whenever an officer restrains the freedom of a person to walk away, he has seized that person. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979);  *United States v. Brignoni-Ponce*, 422 U.S. at  878. An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As

a general matter, the decision to stop an automobile is reasonable where the police officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7(1989); *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

The uncontroverted record demonstrates that Arceneaux used a police Doppler radar device which clocked the vehicle driven by Dana Robertson on Interstate 49 at 81 mph in a 75 mph speed zone.  Therefore, there was not only reasonable suspicion but probable cause for him to stop the vehicle for speeding. The plaintiffs do not challenge the reasonableness of the stop of the Robertson vehicle.  The focus of the plaintiffs' challenge to the claim of qualified immunity is on the events after the stop, which escalated from Arceneaux's presentations of the citations for signature, to actions by Arceneaux to place Dana Robertson under arrest and handcuff her.

The evidence submitted by the plaintiffs, which must be construed in their favor, is that Dana Robertson never refused to sign the citations at Arceneaux's direction. When her husband suggested the dashboard camera could be the subject of a subpoena to prove their child was restrained, Arceneaux angrily ordered Dana Robertson out of the car. She complied, but when she questioned the seat belt violation again, Arceneaux told her to put her hands behind her back, then angrily

grabbed her arm to handcuff her and stated "so now you are resisting arrest," and began violently swinging her "back and forth, side to side like a ragdoll as she held the ticket in one hand and the pen in another" badly bruising her in the process. When Dana Robertson said she would sign the ticket after Arceneaux put a can of mace 1 inch from her face, his response was that it was too late.

Arceneaux's evidence is that despite his explanation that her signature was required, the plaintiff refused to comply with his instruction.  Once she was outside her vehicle, as directed by Arceneaux, her husband also exited the vehicle and was commanded by Arceneaux to return to the vehicle.  Mr. Robertson ignored that direction and told Mrs. Robertson to drop the ticket book and pen presented to her by Arceneaux which she did. At that point, Arceneaux could have reasonably inferred that Dana Robertson was refusing to sign the traffic citations, and he decided to arrest her, consistent with the provisions of La. R.S. 32:391. Arceneaux could have also had a reasonable concern for his own safety when Stephen Robertson exited the vehicle and approached him "in an angry manner," to within 3 feet disregarding the officer's loud verbal commands that he return to the vehicle. [Rec. Doc. 31-2, ¶¶12-13].  Once the decision to arrest was made, application of handcuffs was the protocol to be followed for safety reasons.

Louisiana law requires a person to submit peaceably to a lawful arrest, and

if a person even threatens resistance, the person making the arrest may use reasonable force to effect the arrest and detention. LSA-C.Cr.P.Art. 220. According to Arceneaux, to some degree corroborated by the observations of Agent Sanchez, Mrs. Robertson resisted the instructions of the officer and physically failed to comply with his instructions that she place her hands behind her back in order to be handcuffed.  He testified that she was twisting and turning and behaving belligerently. Although he was not aware of the sequence of events leading up to the arrest, Agent Sanchez observed that during the time he was in their presence, both the female and male appeared belligerent, hostile, and irrational. Therefore, under Arceneaux's version of the events, he also had reasonable cause to arrest Dana Robertson for resisting arrest by her non-compliance. La. R.S.14:108(A)(B)(1)(b)[4].

Based on Arceneaux's version, since there was probable cause for the initial stop and seizure, and the actions of Mr. and Mrs. Robertson as set forth by

---

[4]La. R.S. 14:108 provides in pertinent part:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
The phrase "obstruction of" includes "any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail." La. R.S. 14:108(B)(1)(b).

Arceneaux could reasonably be construed to trigger the application of Louisiana law to effectuate an arrest such that there was no constitutional violation in the events leading up to the stop and formal arrest of Mrs. Robertson. Further, given the existing law of Louisiana,  it cannot be said that Arceneaux's actions were objectively unreasonable in light of the law that was clearly established at the time of the arrest.

However, under Mrs. Robertson's version of the events, she did not refuse to sign the tickets, and therefore, there was no basis to formally arrest her. In the context of a driver questioning an officer about the basis for the issuance of a citation, it would be objectively unreasonable to contend that the driver was resisting arrest and then place the driver, who posed no threat to the officer, in handcuffs and threaten her with mace.

The stark contrast in the factual events presents a genuine issue of material fact. Thus, it is the finding of this Court that Arceneaux would be entitled to qualified immunity for his actions up until the time Dana Robertson was ordered out of the car. However, the Court cannot find that Arceneaux is entitled to qualified immunity for Arceneaux's actions from the time she was ordered out of the car, arrested and handcuffed.  To that extent, the Court recommends that the motion be denied.

**B.     The Arrest of Stephen Robertson**

In opposition to the motions before the Court, the plaintiffs have offered no

evidence or argument regarding the claims of Stephen Robertson that he was

subjected to an illegal arrest or the defendants' defenses of qualified immunity as

to those claims.

La. R.S. 14:329 provides:

> Interfering with a law enforcement investigation is the intentional
> interference or obstruction of a law enforcement officer conducting
> investigative work at the scene of a crime or the scene of an accident
> by refusing to move or leave the immediate scene of the crime or the
> accident when ordered to do so by the law enforcement officer when
> the offender has reasonable grounds to believe the officer is acting in
> the performance of his official duties.

There is no dispute that during Arceneaux's interactions with Dana

Robertson, Stephen Robertson argued against the traffic citations; he exited the

vehicle when his wife was directed out of the vehicle to speak with Arceneaux,

and he approached Arceneaux  to a proximity of 3 feet during the time Arceneaux

was attempting to deal with Dana Robertson individually despite Arceneaux's

"loud verbal commands" that he return to his vehicle. [Rec. Doc. 31-2, p. 5].

At that time, based on the plaintiffs' evidence, Stephen Robertson instructed

his wife to drop the ticket book and pen provided to her by Arceneaux for the

signing of her citations.  Even when Agent Sanchez arrived on the scene, Stephen Robertson failed to comply with the directive that he return to his vehicle until he too was threatened with arrest.  Mr. Robertson was allowed to drive his vehicle to the police station and to remain with his children during the booking of his wife.  It was not until she was free to be with the children that Stephen Robertson was placed under arrest for interfering with a law enforcement investigation.  He was not handcuffed, and he has not made a claim of excessive force.  On these facts, it is the finding of the Court that  the plaintiff has not established a constitutional violation as to the arrest or that the actions of Arceneaux were unreasonable under the circumstances based on clearly established law. Thus, Stephen Robertson has not met his burden to overcome the immunity defense and the motion should be granted as to the arrest of Stephen Robertson.

## III.    The Motion of Darwin Select Insurance

In a document styled as Darwin Select Insurance Company's Response To Motion for Summary Judgment on Qualified Immunity [Rec. Doc. 43], and citing to Louisiana's "Direct Action" statute at La. R.S. 22:1269, the insurer Darwin urges in an abundance of caution that "if the Court grants summary judgment for any of the individual defendants and dismisses any of Plaintiffs' claims against them, those claims should also be dismissed as to Darwin as well." [Rec. Doc. 43,

p. 1].  Plaintiffs have not opposed the Darwin motion, and it is the recommendation of the Court that the motion be GRANTED, limited by the other findings of the Court on the Motion for Summary Judgment by the other defendants.

### *Recommendations*

Based on the foregoing,  the Court recommends that the motions of  Police Chief Ronnelle Broussard, and Mayor Joseph Pitre for summary judgment [Rec. Doc. 31] as to the §1983 claims against them in their individual capacities based on qualified immunity be GRANTED, and that those claims should be dismissed.

The Court recommends that the motion for summary judgment by Officer Arceneaux as to the §1983 claims against him in his individual capacity be DENIED on the basis that a genuine issue of material fact exists.

The Court  recommends that the motions be GRANTED as to the §1983 claims against Officer Richard Arceneaux, Police Chief Ronnelle Broussard, and Mayor Joseph Pitre in their official capacities and that those claims  be dismissed as redundant of the claims articulated against the Town of Washington.

Finally, it is the recommendation of the undersigned that the Motion for Summary Judgment by Darwin Select Insurance Company [Rec. Doc. 43] should

be GRANTED, limited in scope to the Court's findings and rulings on the motions of the individual defendants as insureds of Darwin Select Insurance Company.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglas v. United Services Automobile Association*, 79 F.3d 1415(5th Cir. 1996).

Signed at Lafayette, Louisiana this 12th  day of February, 2015.

_____
             Patrick J. Hanna
         United States Magistrate Judge

-27-

COPY SENT:

DATE:  ___2/12/2015_____
BY:  _____EFA_____
TO:  _____RFD_____
             cg