UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

FELIX ANTHONY DEJEAN                    CIVIL ACTION NO. 13-CV-3020

VERSUS                                  JUDGE DOHERTY

TOWN OF WASHINGTON, ET AL               MAGISTRATE JUDGE HANNA

### *Report and Recommendation*

Before the Court are the Motion for Summary Judgment based on Qualified Immunity filed by Officer Richard Arceneaux, Police Chief Ronelle Broussard, and Mayor John Pitre [Rec. Doc. 33] and the corresponding motion by Darwin Select Insurance Company. [Rec. Doc. 44].   The motions have been referred to the undersigned for Report and Recommendation.   One of them is opposed by the plaintiff. [Rec. Doc. 45].  A Reply/Response memorandum was filed by the movants. [Rec. Doc. 48].    After considering the filings and arguments of the parties, the applicable law, and for the reasons set out herein, it is recommended that the motions be GRANTED in part and DENIED in part.

### *Factual and Procedural Background:*

This litigation arises out of events on the afternoon of December 2, 2012.  At approximately 3:47 p.m., Town of Washington police officer Richard Arceneaux responded to a 911 call from St. Landry Parish about a piece of steel on the interstate

highway near Mile Marker 25. [Rec. Doc. 33-3, p. 3]. The Town of Washington dispatcher sent Arceneaux to investigate and remove the obstruction.  He drove to the area, turned around across the median of the interstate highway to drive north back to Exit 25, where he had been told the metal object was located.  He saw a large piece of steel resembling an 18 wheeler muffler in the right lane of the interstate.  He stopped his police unit in the travel lane of the highway, just north of the sign identifying the corporate city limits of the Town of Washington, and he activated his emergency lights with an arrow directing that all traffic should move to the left lane. He got out of his unit and removed the piece of metal and other smaller scraps to the roadside. [Rec. Doc. 33-3, p. 7, ¶¶3-6].

According to Mr. Dejean, at about the same time, he entered the northbound section of the interstate highway near the Highway 167 intersection.  He observed the flashing blue lights of a police car ahead in the distance, but he could not tell if the vehicle was stationary or moving. He proceeded north on the highway in the right hand travel lane. [Rec. Doc. 45-3, p. 21, ¶¶1-2].  He observed other vehicles begin to merge into the left lane of travel at a reduced speed.  He then noticed that the police vehicle was unmanned and he moved into the left lane to pass the police unit.  As he did so, he saw a police officer standing in the roadway in front of the stopped police vehicle. [Rec. Doc. 45-3, pp. 21-22, ¶¶3, 5].  He blew his horn to get the officer's

attention, made eye contact with the officer, and mouthed words to the officer, pointing at the vehicle. [Rec. Doc. 45-3, p. 22, ¶6].

According to Officer Arceneaux, as he moved to return to his unit after clearing the debris, he heard a long continuous horn honking and saw a tan SUV driving in the right lane of the roadway, despite the directional arrow flashing on the police unit. He observed the vehicle swerve at the last second into the left lane, almost striking the police vehicle. The driver made eye contact, used his finger to express something and mouthed words at the officer.[Rec. Doc. 33-3, p. 7, ¶7]. Because of the driver's reckless manner of operating his vehicle, Arceneaux got into his unit, engaged his siren and pulled over the driver who he later learned was Felix Dejean. There is no dispute that the stop occurred within the city limits of the Town of Washington.

Under Arceneaux's version of the facts, Dejean was told that he had been stopped for driving recklessly. Arceneaux asked for Dejean's driver's license and registration, but he refused to produce them. Dejean also refused the officer's directive to exit the vehicle. Arceneaux opened the driver's door and ordered Dejean out of the vehicle. [Rec. Doc. 33-3, p. 8, ¶11]. According to Arceneaux, Dejean did not immediately comply but turned and reached for something to the right side of his seat. Arceneaux asserts he used stronger verbal commands ordering Dejean to show his hands. Dejean ignored the directive and continued to turn his body and reach

between the seats in the SUV.  Arceneaux asserts he loudly commanded Dejean two more times to place his hands on the wheel, and Dejean refused to comply. Arceneaux drew his weapon and trained it on Dejean, ordering him again to show his hands.  Dejean complied.  Arceneaux holstered his weapon  and ordered Dejean to exit the vehicle, but Dejean continued to argue with the officer, staying in the vehicle. At that point, Arceneaux withdrew his OC spray cannister.  When he saw the cannister, Dejean stated, "I know you aren't going to spray me with that." [Rec. Doc. 1-1, ¶12].[1]  Arceneaux sprayed Dejean on his neck as he turned away. [Rec. Doc. 1-1, ¶13].  Dejean then complied and got out of the vehicle.

According to Arceneaux, Dejean was advised of his *Miranda* rights, handcuffed and placed under arrest at about 4:19 p.m. [Rec. Doc. 33-3, pp. 4, 11]. Arceneaux searched the vehicle and found a hatchet wedged between the front seat and the console, which he photographed, bagged and secured as evidence. [Rec. Doc. 33-3, p. 8,¶16]. Arceneaux requested assistance for transport, and another officer (Lazard) arrived and took Dejean to the police station where he was booked with reckless operation and resisting an officer by failing to comply.  DeJean was placed in a holding cell by 4:24 p.m. [Rec. Doc. 33-3, pp. 4, 8-9, ¶18-19].

---

[1]The order of these events is disputed by the parties, with Dejean asserting that the officer drew his weapon after the use of OC spray.

-4-

The matter was set for hearing in the Mayor's Court.  The mayor and the city attorney recused themselves as friends of Dejean, and another attorney was selected to preside.  At the hearing, Dejean asserted that the probable cause to arrest him occurred outside the city limits of Washington, making the arrest invalid.  Arceneaux testified that the probable cause arose within the city limits where the metal was found.  The presiding attorney dismissed the charges based upon his conclusion that the incident occurred outside city limits.

In the complaint, Dejean alleged that Arceneaux abused his authority as a police officer and, by taking advantage of his position as a police officer, submitted Dejean to unreasonable hardships and demands. [Rec. Doc. 1-1, ¶23].  Dejean alleged he was maced  and held at gunpoint by Arceneaux and was forced to remain in handcuffs for approximately one hour on the roadside while his vehicle was searched without his consent and that he was placed in a holding cell for approximately two hours. [Rec. Doc. 1-1, ¶¶12-14, 21, 26, 31]. Dejean also alleged that Arceneaux falsified the incident report. [Rec. Doc. 1-1, ¶41].  Dejean alleged the conduct of Arceneaux constituted false arrest, wrongful imprisonment, negligent arrest, criminal malicious prosecution, defamation, and intentional infliction of emotional distress. [Rec. Doc. 1-1, ¶42]. The pleading does not specifically allege excessive force by Arceneaux, but it does contain factual allegations regarding the officer's use of mace

and drawing and pointing his weapon at Dejean, which do raise the issue of excessive force.

On April 10, 2013, DeJean filed suit in the 27th Judicial District Court, Opelousas, Louisiana against the Town of Washington, the Washington Police Department, Officer Richard Arceneaux, Police Chief Ronnelle Broussard, and Mayor Joseph Pitre. The claims are brought under 28 U.S.C. §1983. The individual defendants have been sued in both their official and individual capacities. [Rec. Doc. 1-1, ¶2].   Municipal liability has been asserted against the Washington Police Department and the Town of Washington. State law tort claims  have also been raised. In a First Supplemental and Amended Petition for Damages filed October 3, 2013, the insurer Allied World National Assurance Company was added as a defendant. [Rec. Doc. 1-1, p. 76].  On November 8, 2013, the captioned matter was removed to this court by Darwin Select Insurance Company[2], based on federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. Dejean asserted that the acts of the named defendants infringed on his constitutional rights to be protected against arrest without probable cause, warrantless searches, deprivation of liberty and

---

[2]The insurer defendant was incorrectly identified in the First Supplemental and Amended Petition for Damages as Allied World National Assurance Company.  In the Notice of Removal and in the Answer, Darwin Select Insurance Company pointed out the error and acknowledged its status as the proper defendant. [Rec. Doc. 1, 15]

property without due process and other guarantees provided by law. [Rec. Doc. 1-1, ¶45].

### *Applicable Law and Analysis*

In the Motion for Summary Judgment [Rec. Doc. 31], the defendants seek dismissal of the §1983 claims against Arceneaux, Chief Broussard, and Mayor Pitre in their individual capacities because of qualified immunity. The motion is limited, however, and focuses on the stop and arrest of Dejean and whether Arceneaux had probable cause for same. It does not address excessive force as the defendants contend that the plaintiff has not made an excessive force claim.

### *I. The Summary Judgment Standard:*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d at 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id.* All facts and justifiable inferences are construed in the light most favorable to the nonmovant. *Brumfield v. Hollins*, 551 F.3d at 326;  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.   *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. at 325. The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005).  Where no such showing is made, the moving party "is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with

respect to which she has the burden of proof." *Lujan v. Nat. Wildlife Federation*, 497

U.S. 871, 884 (1990) (*quoting Celotex Corp. v. Catrett*, 477 U.S. at 322-23(1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of  contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075(5th Cir. 1994)(en banc)(citations and

internal quotation marks omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists,

"credibility determinations are not part of the summary judgment analysis." *Id.*  To

the contrary, in reviewing all the evidence, the court must disregard all evidence

favorable to the moving party that the jury is not required to believe, and should give

credence to the evidence favoring the nonmoving party, as well as that evidence

supporting the moving party that is uncontroverted and unimpeached. *Roberts v.

Cardinal Services*, 266 F.3d 368, 373(5th Cir. 2001).

*II. 42 U.S.C. §1983*:

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. §1983; *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 n. 3 (5th Cir.1999).  To pursue a claim under §1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir.2008).  The defendants do not contest whether Officer Arceneaux, Chief Broussard and Mayor Pitre acted under color of law at the relevant times.  They do challenge the alleged constitutional violations.

*A. The Official Capacity Claims are Redundant and Should be Dismissed.*

"A judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents." *Deshotels v. Village of Pine Prairie*, No. 11-CV-2052, 2012 WL 1712358, at *4 (W.D. La. Apr. 13, 2012). Therefore, it is "well settled that a suit against a municipal official in his or her

official capacity is simply another way of alleging municipal liability." *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012). When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them. See, e.g., *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Flores v. Cameron County, Tex*., 92 F.3d 258, 261(5th Cir. 1996). In keeping with this principle, the undersigned finds that the plaintiffs' claims against the individual defendants in their official capacities are redundant of the claims asserted against the government entity defendant, and the official capacity claims against Arceneaux, Broussard and Pitre should be dismissed.

*B. The Plaintiff has Failed to Meet His Burden to Establish Individual Capacity Claims Against Chief Broussard and Mayor Pitre.*

In order to assert a valid claim against an official in his individual capacity, a §1983 claimant must establish that the defendant was either personally involved

in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.  *Jones v. Lowndes County, Miss*., 678 F.3d 344, 349 (5th Cir. 2012).  "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).  "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011), quoting *Gates v. Texas Department of Protective & Regulatory  Services*, 537 F.3d 404, 435 (5th Cir. 2008).  To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiffs must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates. *Porter v. Epps*, 659 F.3d at 446; *Gates v. Texas*, 537 F.3d at 435. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter v. Epps,* 659 F.3d at 447, quoting *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011).

The individual capacity claims by Dejean against Chief  Broussard and Mayor  Pitre are set out at Paragraphs 43-44 of the Complaint [Rec. Doc., 1-1, p.

9].  In response to the assertion of the qualified immunity defense by these

defendants and the arguments made in the motion relative to Mayor Pitre and

Chief Broussard, Dejean has declared that he "does not challenge the qualified

immunity defense as to their individual liability." [Rec. Doc. 45, p. 7].

Mayor Pitre testified that he is not involved in police activity and rarely saw

Arceneaux.  There is no evidence in the record that he was personally involved in

anything having to do with the arrest of Dejean, that he implemented any

unconstitutional policies or that he acted or failed to act with deliberate

indifference to the alleged constitutional violations committed by Arceneaux.

Thus, the plaintiff has failed to set forth evidence necessary to support a cause of

action against Mayor Pitre in his individual capacity.

As to Chief Broussard, there is no dispute that he had no personal

involvement in the stop and arrest of Dejean.  There is no evidence that Chief

Broussard participated in a constitutional deprivation or that any wrongful action

by him was causally connected to a constitutional deprivation.  There is also no

evidence that Chief Broussard acted or failed to act with deliberate indifference to

the alleged constitutional violations committed by Arceneaux.

Since there is no evidence to support the individual capacity claims by

Dejean against these defendants, and without objection or contest by the plaintiff,

the motion should be granted as to the defendants Chief Ronelle Broussard and

Mayor Joseph Pitre.

### III. Qualified Immunity of Arceneaux:

Officer Arceneaux seeks dismissal of the individual capacity claims against

him based on qualified immunity.[3] "A qualified immunity defense serves to shield

a government official from civil liability for damages based upon the performance

of discretionary functions if the official's acts were objectively reasonable in light

of then clearly established law." *Atteberry v. Nocona General Hospital*, 430 F.3d

245, 253 (5th Cir.2005) (citation omitted). Qualified immunity protects "all but the

plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*,

475 U.S. 335, 341(1986).

Recently, the Supreme Court clarified the role of the courts in deciding a

qualified immunity defense at the summary judgment stage. Specifically, the Court

held the Court of Appeals failed to view the evidence in a light most favorable to

the nonmoving party, and in so doing, provided a roadmap for the district court to

follow in its analysis:

---

[3] While the movants suggest Mayor Pitre and Chief Broussard have qualified immunity, the Court has found that the plaintiffs have not met their burden to establish a valid §1983 claim against these two individuals and does not reach the question of their qualified immunity.

-14-

In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]"         .         .         .

The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. ... Governmental actors are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " . . . "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." . . .

Courts have discretion to decide the order in which to engage these two prongs. . . . But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. . .This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." . . .Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." . . . In making that determination, a court must view the evidence "in the light most favorable to the opposing party." . . .

Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or seizures, we have instructed that courts should define the "clearly established" right at issue on the basis of the "specific context of the case." . . .Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. See *Brosseau*, supra, at 195, 198, 125 S.Ct. 596 (inquiring as to whether conduct violated clearly established law " 'in light of the specific context of the case' " and construing "facts ... in a light most favorable to" the nonmovant).

-15-

*Tolan v. Cotton,* ___ U.S. ___; 134 S.Ct. 1861, 1865-1866, ( May 5, 2014)
(citations omitted).

*A. The Stop and Arrest of Dejean for Reckless Operation*:

Whenever an officer restrains the freedom of a person to walk away, he has

seized that person. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

Temporary detention of individuals during the stop of an automobile by the police,

even if only for a brief period and for a limited purpose, constitutes a "seizure" of

"persons." *Whren v. United States, 517 U.S. 806, 809-10, (1996); Delaware v.*

*Prouse*, 440 U.S. 648, 653 (1979);  *United States v. Brignoni-Ponce*, 422 U.S. at

878. An automobile stop is thus subject to the constitutional imperative that it not

be "unreasonable" under the circumstances.

As a general matter, the decision to stop an automobile is reasonable where

the police officer's action is supported by reasonable suspicion to believe that

criminal activity "may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7(1989);

*United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion must be

supported by particular and articulable facts, which, taken together with rational

inferences from those facts, reasonably warrant an intrusion." *United States v.*

*Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994).  The "presence or absence of

reasonable suspicion must be determined in light of the totality of the

circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." *United States v. Silva*, 957 F.2d 157, 160(5th Cir. 1992). However, when an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation. *Whren v. United States*, 517 U.S. at 810, 813.

The elements of the offense of reckless driving in Louisiana include (1) operation of a vehicle and (2) criminal negligence or recklessness. La. R.S. 14:99. "Criminal negligence" is defined as "such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La. R.S. 14:12.   Based on his version of the facts, rather than charge Dejean with reckless driving, Arceneaux could have charged Dejean with careless operation of a vehicle under La. R.S. 32:48 which provides:

> A.  Any person operating a motor vehicle on the public roads of this state shall drive in a careful and prudent manner, so as not to endanger the life, limb, or property of any person.  Failure to drive in such a manner shall constitute careless operation.

It is uncontroverted that Arceneaux had his marked police vehicle stopped in the right lane of an interstate highway, with flashing blue lights and emergency

directional lights activated, instructing oncoming traffic to move into the left lane of travel.  Arceneaux stood outside his vehicle when he saw the Dejean SUV approach behind the police unit in the right lane.  According to Arceneaux, he saw the SUV approach to within  "a few feet" from the rear of the police unit, swerving into the left lane "at the last possible second." [Rec. Doc. 33-3, ¶7].  The driver was blowing his horn, and as he passed, he looked directly at the officer and seemed to be saying something. [Rec. Doc. 33-3, ¶7]

From his vantage point, Arceneaux perceived that the swerving vehicle "almost struck" his unit and concluded the vehicle was being driven in a reckless manner. [Rec. Doc. 33-2, Arceneaux Depo. pp. 128-29, 134-35] When asked the direct question why he made the stop of the Dejean vehicle, Arceneaux responded "I made the stop because he almost struck my unit."  [Rec. Doc. 33-2, Arceneaux Depo. p. 134].

These facts, if taken as true, would be sufficient to establish reasonable suspicion for the stop of the Dejean vehicle. However, Dejean disputes that he swerved into the left lane at the last possible second. He does not dispute that he honked his horn, made a gesture and mouthed something to Arceneaux - actions which do not raise reasonable suspicion that criminal activity may be afoot. Although the actions could be construed as potentially offensive to Arceneaux,

-18-

that does not form the basis for a reasonable suspicion to effect a seizure. Thus,
the credibility of each witness is squarely at issue, and viewing the evidence in the
light most favorable to the party claiming injury, a genuine issue of material fact
exists as to whether there was a reasonable suspicion or probable cause to stop
Dejean.

The parties' dispute about the precise location of the incident at issue and
the stop and arrest of Dejean in the context of territorial jurisdiction is not
determinative of the qualified immunity question before the court.  First, the
Louisiana codal provision which authorizes lawful arrest without a warrant
empowers officers in close pursuit to leave their territorial jurisdiction for the
purpose of effecting an arrest.  Louisiana Code of Criminal Procedure article 213
provides in part:

> A.  A peace officer may, without a warrant, arrest a person when any
> of the following occur:
> (1) The person to be arrested has committed an offense in his
> presence; and if the arrest is for a misdemeanor, it must be made
> immediately or on close pursuit.
> ***
> B.  A peace officer making an arrest pursuant to this Article who is in
> close pursuit of the person to be arrested may enter another
> jurisdiction in this state and make the arrest.

Dejean has cited no contradictory legal principal, and he has offered nothing

to support an argument that the territorial jurisdiction issue rises to constitutional proportions or that Arceneaux's interpretation of his location and jurisdiction were objectively unreasonable under the circumstances.  The testimony of Arceneaux that he stopped his police vehicle within the city limits of the Town of Washington is supported by the mile marker references in the police department activity logs and his specific recollection of the southern city limits marker near his location. Regardless of the outcome of the Dejean trial and the finding of the Mayor's Court on that question, the actions of Arceneaux to stop Dejean were consistent with the provisions of Louisiana law cited above, and Dejean has not shown them to be objectively unreasonable under the circumstances presented. Further,  regardless of whether Arceneaux had authority under state law to make the arrest, the arrest is valid under constitutional principles so long as the officer had probable cause to arrest. See *Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 1991)("[W]e hold 'there is no cause of action for "false arrest" under section 1983 unless the arresting officer lacked probable cause.'").

It is the finding of this Court that a genuine issue of material fact exists whether there was reasonable suspicion or probable cause to stop and arrest Dejean for reckless driving and that Arceneaux is not entitled to summary judgment on qualified immunity for the events up to and including the arrest of

Dejean for a violation of the traffic laws of Louisiana.  To that extent, the motion should be denied.

*B. There are genuine isses of fact on the resisting arrest charge:*

The Court notes that neither party has adequately addressed the separate charge against Dejean for resisting arrest, and there are significant factual disputes regarding the events and actions of both parties leading up to that charge.  Dejean contends that he acted quickly to comply with all of the directives he was given by Arceneaux. In direct contrast, Arceneaux contends that Dejean resisted and challenged all of his directives.  The parties even disagree on what the directives were.  The two versions of events cannot be reconciled.  The motion should therefore be denied as to those events on the basis of the genuine issues of material fact.

*C. Excessive Force:*

The focus of the motion before the court is limited to the plaintiff's claims of false arrest.  The issues related to Dejean's factual claims of excessive force by Arceneaux are not addressed, based on the movants' assertion that no excessive force claim appears in the pleadings.  The undersigned disagrees, as the pleadings contain significant factual detail of actions by Arceneaux which could rise to the level of constitutional violations based on excessive force, including use of OC

spray and drawing of the defendant's police weapon upon the plaintiff.  The record is replete with factual disputes regarding those events, from the descriptions of the officer's directives to Dejean, to the general order of events after the traffic stop of Dejean, to the justification or lack thereof for the use of force by Arceneaux. Those questions are not presented in the context of the limited motion before the court, and the excessive force analysis must wait for another day.  It is the recommendation of the undersigned that to the extent the motion may encompass the claims of excessive force as against Arceneaux the motion be denied without prejudice to the rights of Arceneaux to present them for consideration by the court before trial.

## IV.   *The Motion of Darwin Select Insurance*:

In a document styled as Darwin Select Insurance Company's Response to Motion for Summary Judgment on Qualified Immunity [Rec. Doc. 44], and citing to Louisiana's "Direct Action" statute at La. R.S. 22:1269, Darwin arugues out of an abundance of caution that "if the Court grants summary judgment for any of the individual defendants and dismisses any of Plaintiff's claims against them, those claims should also be dismissed as to Darwin as well." [Rec. Doc. 44, p. 1]. Plaintiffs have not opposed the Darwin motion, and it is the recommendation of the Court that the motion be granted, limited by and to the extent of the other

findings of the Court on the Motion for Summary Judgment by the other defendants.

### *Recommendations*

Based on the foregoing, and for the reasons set out herein, the Court recommends that the motion of Officer Richard Arceneaux for summary judgment as to the §1983 claims against him in his individual capacity based on qualified immunity be DENIED on the basis that there exists genuine issues of material fact whether there was reasonable suspicion or probable cause to stop and arrest Dejean for reckless driving. As such, the Court cannot determine at the summary judgment stage whether the seizure was reasonable under the circumstances. Likewise, the Court finds genuine issues of material fact exist as to whether there was probable cause to  arrest based on resisting arrest and recommends the motion be DENIED on that claim as well.

It is recommended that the motions of Police Chief Ronnelle Broussard and Mayor Joseph Pitre for summary judgment as to the §1983 claims against them in their individual capacities be GRANTED, and that those claims should be DISMISSED.

The undersigned also recommends that the motions be GRANTED as to the §1983 claims against Officer Richard Arceneaux, Police Chief Ronnelle

Broussard, and Mayor Joseph Pitre in their official capacities and that those claims be DISMISSED as redundant of the claims articulated against the Town of Washington.

To the extent excessive force claims against Arceneaux have been articulated in the complaint, but not addressed by the parties in the context of the motions presented, those claims are not before the Court on the qualified immunity question and the motion should be DENIED without prejudice to the defendant's right to challenge such claims whethr by a motion under Fed.R.Civ.P. 12(b)(6) or by summary judgment to the extent they are raised by an amended complaint.

Finally, it is the recommendation of the undersigned that the motion for Summary Judgment of Darwin Select Insurance Company [Rec. Doc. 44] should be GRANTED in part and DENIED in part, limited in scope and consistent with the court's findings and rulings on the motions of Arceneaux, Chief Broussard and Mayor Pitre as insureds of Darwin Select Insurance Company.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge

at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except on grounds of plain error.  See Douglas v. United Services Automobile Association, 79 F.3d 1415(5th Cir. 1996).

Signed at Lafayette, Louisiana this 23rd day of April, 2015.


_____
Patrick J. Hanna
United States Magistrate Judge


COPY SENT:

DATE: __4/24/2015_____
BY: _____EFA_____
TO: _____RFD_____
cg

-25-